**LAW OFFICE OF GREGORY N. DUTCH**

119 Martin Luther King Jr. Blvd
Suite 202
Madison, Wisconsin 53703
(608) 661-5100
GND@MYDLAW.COM

**SENTENCING MEMORANDUM/REQUEST FOR VARIANCE**

Dear Judge Crabb:

> O. That this too solid flesh would melt
> Thaw and resolve itself into a dew!
> Or that the Everlasting had not fix'd
> His cannon 'gainst self-slaughter! O God! God!
> How weary, stale, flat and unprofitable,
> Seem to me all uses of this word. (*Hamlet*, verse 1)

The first lines of Hamlet start off very mild, but knowing this is Hamlet, and what is coming, it is always important in the understanding of Hamlet to know what a profound effect his father's death and the marriage of his mother to his brother-his killer-will mean to him as the play reveals the secrets to him.

Thomas Valley (hereafter Tom ) was a fairly normal child growing up: he never had a father, but his mother provide for him and his family was close. According to his Mother, Kay Jensen, Tom's father was always locked up for criminal conduct.  His last visit was when Tom was 7 or 8 and it was through the window at the Dane county jail.  Tom's father was released from jail in August, 2001 at which point he fled the state.  A felony bench warrant was issued in August of 2001, he has not been heard of since.

Thus, Tom's maternal grandfather stepped in as Tom's surrogate father. Both Tom and Kay have very happy memories of those times when Roger Jensen moved into the home. He took Tom to school, played ball with him, helped him do the chores he has just previously assigned Tom to do.  (he did not want Tom to fail his task at hand) Tom has especially found memories of fishing with his grandfather. He was taught the precise way to bait a fly, the exact number of times he must turnaround the line before you loop it back through the "fish eye". The art of casting in the Black Earth creek was utter excitement, Grandpa's flick of his rest, being able to hit deep pools 40 feet away, watching the trout hit the line, it was the best of times.

Roger committed suicide by hanging himself in the basement of Tom's house, he was 8 years old. The self infliction of pain and cutting his own arms and legs began shortly after the funeral.

Tom was cutting himself for a plethora of reasons: attention, reminder that he had lost his father and grandfather, coping, to feel, as Tom said, "I cut to create pain on the outside because I was so numb on the inside". Tom had yet to turn 10.

Thus began Tom's decent into a mind numbing ride into the rabbit hole. Kay was immediately concerned and sought help. There was the usual diagnosis of ADHD, bi-polar. Drugs provided, counseling given, Tom cutting himself and beginning to have behavioral problems. His first hospital stay was in February of 1996 which lasted to the end of May. Tom was inpatient at the Merriter psychiatric ward, he was 11 years old. Restraints, forced medication, outbursts, followed by tears and mind numbing quiet was his life. This is not how an eleven year old should spend his days.

When Tom was finally submissive enough to leave Merriter, he returned home to a house that was just for him and his mother. No male figure was, up to this point, able to step in for his

absent father and dead grandfather. He quickly was labeled by the state of Wisconsin a "child in need of protection and services" (known as a Chip's Child WI sec 48 et seq,.) and a court ordered him confined at Mendota Hospital. Mendota is not a nice, confined country club setting, but it was necessary to determine the medication, counseling on his need to stop cutting, and the hope he could be back at home by Christmas.

By now Tom was almost 14, but he had a hard time adjusting to school. He was formally diagnosed with numerous problems including Bi-Poler, psych.-deficient disorder, schizo affective disorder, to name a few. Placement continued out of home for the next couple of years: Tom moves to Mercy Options in Janesville for residential care, foster homes, none were able to deal with his health issues, another commitment at Mercy Options. Finally, Dane County Human Services have no other choice but to keep him in the county, monitor his medication, place him in special education programs, and let him return home to his mother.

The sexual abuse began shortly after his return home. The first was a babysitter, who brought her son with her on the job. Although he was only 3 years older, he was large and aggressive, Tom never lashed out, he would turn inward and just cut himself, and have thoughts of fishing with his grandfather. Tom was permissive and subservient, whimpered not a screamer, passive, never aggressive, a perfect candidate to be a victim of sexual abuse.

> Out of the night that covers me.
> Out of the night that covers me,
> Black as the pit from pole to pole'
> I thank whatever gods may be,
> For my unconquerable soul.
>
> In the fell clutch of circumstance

> I have not winced nor cried aloud,
> Under the bludgeonings of chance
> My head is bloody, but unbowed.
>
> Beyond this place of wrath and tears
> Looms but the Horror of the shade,
> And yet the menace of the years
> Finds, and shall find me unafraid.
>
> It matters not how strait the gate,
> How Charged with punishment the scroll,
> I am the master of my fate:
> I am the captain of my soul.   (William Ernest Henley)

Thoughts of suicide were always present. Still Tom tried high school. He was classified at an early age with a learning disorder, so the Madison School System placed him at a special needs school for students with special needs. His medication was not refined, he felt tired all the time, his mind was in a fog. Tom stayed at home, he was socially awkward. Thus, when he turned 18, Kay Jensen thought it a good idea, and support staff concurred, that Tom could leave his home and live in an adult group home. Here, they tried to teach him basic skills like cooking, cleaning, self hygiene, how to try and manage a budget, everything Tom would need to move into transitional housing.

Tom was living in special housing for the next few years. He received SSI, and had a girlfriend. Tom also made a decision to stop taking his medication, he was over 18, and there was no recent activity of him harming himself or others, so there could be no court order in place to have him force medication upon him.

Slowly at first, Tom became delusional. Dr. Thomas Moore in his disability report dated October 14th, 2011 notes Tom believes he is a professional wrestler making a living on the road. (I have talked to Tom about this persona, he tell's me "wrestler Tom" takes no back talk from

4

any one, he is strong, and charismatic, where as "this Tom" is passive and restrained, especially when he is properly medicated.).

Tom is losing control of who he is, and the direction he wants to go. He is a wrestler, a professional photographer, he wants to go to Hollywood. Tom is alone, he moves back to his Mother's home, he can use the basement. He has a girlfriend move in, but the basement is a pit, full of trash, broken computers, surrounded by 4 walls with no natural light. He has no friends, he makes up stories about himself, about family in Ireland, about anything except what is his existence, his world, his life.

Tom stays up all night, his Mom gave him her old computer. Tom enters a world he has not known before, he can be someone else, any one but him. He is good with computers, he spends hours on them. He can have a high school experience, he can be that 16 year old guy talking to girls, making conversation, not stuttering, not worrying about giving eye contact, he is becoming more embolden, brazen with his communication, Tom's personalities are morphing into a confident individual who will even try to meet a couple of these girls, even if their mother's are accompanying them. Tom has fallen deep into the rabbit hole.

18 U.S.C. § 3553(a) states in pertinent part:

1) the nature and circumstance of the offense and the history and characteristics of the defendant ;

2) the need for the sentence imposed -

    a) to reflect the seriousness of the offense, to promote

    respect for the law, and to provide just punishment for the offense;

  b) to afford adequate deterrence to criminal conduct;

  c) to protect the public from further crimes of the defendant; and

  d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the advisory guideline range;

5) any pertinent policy statements issued by the Sentencing Commission;

6) the need to avoid unwarranted sentence disparities; and

7) the need to provide restitution to any victims of the offense.

After considering these factors, the statute directs a court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." 18 U.S.C. § 3553(a).

Tom has been at war with himself for all of his life. As a child, he was diagnosed with being bi-polar, schizoaffective disorder, ADHD. He was on medication his whole childhood and he never was able to have a lifestyle one would hope for any child. He had few friends, no siblings or family members his age, no father, it was Tom and his imagination which got him through each day.

Borderline personality disorder usually involves a degree of instability in mood and black-and-white thinking, or splitting. This disease manifest itself in chaotic and unstable relations, issues with self image and disturbance in ones individual self. (9DSM-IV-TR) This can be managed with therapy and a regiment of medication including haloperidol to reduce anger, flupenthixol, and plethora of other anti social drugs.

TREATMENT for post-offense conduct will demonstrate that Tom will be a good candidate for a sentence of imprisonment that should include treatment in the community. (USSG sec.5C1.1(d)(2). Tom, unlike many individuals similarly situated, appears to be a young man who is downloading material because he can, he figured out how to do this on the computer. There is no evidence he shared these files with any one, or just as important, that he made money on these downloaded files, for a uneducated, mentally ill person, he just figured this out.

Why Tom did this is important, but why he is unlikely to do it again is just as important for the court to consider. Tom did not download files because of greed or malice. It maybe that for the production counts, Tom was trying to live through his younger, made up nephew, to experience a time in his life-high school-where it is fun to be a teenager. Tom was about 25 when he posed as a 16 year old boy on "my yearbook", not that far removed from his own teen years. During those times, Tom was in one institute after another, in a hazy fog of prescribed medication that made him unable to think straight and cause him to be tired to the point of exhaustion. No one can argue that his mental disorder and emotional imbalance was an indicator of errant behavior that contributed to this case, and the court should take this into consideration for mitigation. (USSG sec. 5H1.3.)

Tom has a very and slight criminal record, almost non existence. When he is on

medication, he is a whole different person. He acknowledged to the court his involvement in these crimes, he looked the court in the eye and acknowledged what he did, he has accepted his responsibility. Also, Tom did not want a trial, he did not want the girls to testify and have them identify their photos. Some serial predators want a trial, only for the ability to view the material, Tom did not want this to occur. (As the PSR notes, one person indicated she was sexually assaulted by Tom, he has always denied this, but did not want to put he through cross examination, and even the PSR stated it was unconfirmed.). Tom's focus on the past is only for the victims, his sight is on his future.

      The advisory guidelines are incongruent to the statutes for which Tom has entered a plea. Congress has enacted a 5 year minimum, and a 20 year maximum on each count. Even absent the production, he would be at a level 42. (Tom's co-counsel is filing a separate document on the guidelines under USSG sec2.G2. 2) Tom has accepted his responsibility, acknowledging all of his conduct. The plea was very detailed, the court asked specific and hard questions, that Tom replied with aplomb. For all of his pass behavior, he knows what he did was wrong. However, it aids him greatly that he is now being properly medicated. (SEE PSI paragraph 135). Tom's mental and emotional health has been dealt somewhat in this memo and a fantastic summary in the PSI, beginning at paragraph 127.

      Tom would like to somehow respond to the victims, but he is not sure how except as he told me with a blanket apology. (As of this memo, we have not received any victim impact statements). It would be very difficult to apologize to all the girls in the possession charges, although Tom asked if the court had suggestions? The other victims are identifiable, but how to make amends with them will be something for him to consider the rest of his life.

8

As the court is aware, Tom has not been diagnosed with criminally sexual dangerous behavior. Tom has a severe mental illness, as discussed above, but this is treatable. Behavior modification will continue in prison too. With proper medication, counseling sessions, possible vocational training along with necessary supervision, Tom can become re-adjusted in the community when he is done with his incarceration. We would only ask that the punishment phase be sufficient to allow the victims peace of mind, but give Tom the opportunity to show the court, as well as to everyone else, that he can function in society without causing harm to himself or others.

Tom understands the charges are very serious and the consequences severe. Protection of the public has to be a major factor in the court's sentencing consideration. Still, there are many mitigating factors the court can use to fashion a sentence that will take punishment and protection to the community in one hand, but allow Tom to have the chance of still living a life free of the prison bars.

Recommendations:

1. Prison for a length of time sufficient for punishment and treatment.
2. Treatment in prison to address sexual offending behavior and his mental health issues.
3. Treatment facilitated polygraph examinations, which is used in treatment in the federal prisons.
4. Continued psychiatric treatment to facilitate psychological stability. (This is vital given Tom's history of suicide and self-inflicted harm.)

The family's biggest concern is that he may become institutionalized during a long term of incarceration, and he needs to develop both his mental function and skills for employment. He will need to be supervised in the community with continued treatment, and hopefully with the help and care of his Mother and Amanda.( the mother of his child.) Tom has considerable

potential to benefit from his legal intervention and the type of treatment and stability he will have in the future. He will mature and move forward in his life to address the range of issues that have contributed to his behavior.

> Whose woods these are I think I know.
> His house is in the village though.
> He will not see me stopping here
> To watch his woods fill up with snow.
>
> My little horse must think it queer
> To stop without a farmhouse near.
> Between the woods and frozen lake
> The darkest evening of the year.
>
> He gives his harness bells a shake
> To ask if there is some mistake.
> The only other sound's that sweep
> Of easy wind and downy flake.
>
> The woods are lovely, dark and deep.
> But I have promises to keep,
> And miles to go before I sleep,
> And miles to go before I sleep.
>
> ROBERT FROST

By /s/ _____

Gregory N. Dutch

Attorney for Thomas Valley
Law Office of Gregory N. Dutch

ecf;    Lori Baker
        Elizabeth Altman

119 Martin Luther King Jr. Blvd, Suite 202
Madison, WI 53703
608-661-5100

.1

.