UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF WISCONSIN,

      Plaintiff,

  −vs−                        Case No. 11−CR−133−BBC

THOMAS VALLEY,              Madison, Wisconsin
                            August 14, 2013
      Defendant.         1:07 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE DISTRICT JUDGE BARBARA B. CRABB,

APPEARANCES:

For the Plaintiff: Office of the United States Attorney
                  BY:  ELIZABETH ALTMAN
                  Assistant United States Attorney
                  660 West Washington Avenue
                  City Station, Ste. 303
                  Madison, Wisconsin  53703

For the Defendant: Law Office of Greg Dutch
                  BY:  GREGORY DUTCH
                  119 MLK King Jr. Blvd., Ste 202
                  Madison, Wisconsin  53703

                  Nicholson & Gansner, S.C.
                  BY:  NATHAN OTIS
                  14 W. Mifflin Street, Ste. 103
                  Madison, Wisconsin  53703

Also appearing:       Thomas Valley, defendant
                  Lori Baker, U.S. Probation
                    Officer

Lynette Swenson   RMR, CRR, CBC
Federal Court Reporter
U.S. District Court   120 N. Henry St., Rm. 520
Madison, WI  53703   (608) 255−3821

1     (Call to order)

2          THE CLERK:  Case Number 11-CR-133-BBC-1.

3     *United States of America v. Thomas Valley* is called for

4     a sentencing hearing.  May we have the appearances,

5     please.

6          MS. ALTMAN:  Good afternoon, Your Honor.  The

7     United States appears by Elizabeth Altman.

8          THE COURT:  Thank you.

9          MR. DUTCH:  Good afternoon, Your Honor.

10    Mr. Valley is present in court with his attorney Greg

11    Dutch.  Nathan Otis is here as well.  Thank you, Judge.

12          THE COURT:  Thank you.  Mr. Valley, I will

13    start out by telling you that you have a right to appeal

14    any sentence that's imposed on you today.  If you think

15    the sentence is illegal in any respect, you can appeal

16    to the Court of Appeals for the Seventh Circuit.

17    Mr. Dutch is obligated to continue to represent you

18    unless he would be relieved of that obligation by the

19    Court of Appeals, and if he were relieved of the

20    obligation, he would -- the Court of Appeals would

21    appoint new counsel to represent you, and that would

22    still be at government expense.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And have you read the presentence

25    report and discussed it --

1          THE DEFENDANT:  Yes, I have.

2          THE COURT:  -- with Mr. Dutch?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And were there any objections that

5     you had to anything in the report?

6          THE DEFENDANT:  No.

7          THE COURT:  Okay.  Mr. Dutch, for the record

8     you've read the presentence report and the addendum and

9     you had no objections to anything in there?

10          MR. DUTCH:  Judge, I did want to bring up, and

11     I talked to Ms. Baker, it was only today, just about a

12     couple of issues on the supervisory plan that's set

13     forth on paragraphs 151, and I wanted -- I'll just wait

14     one second while the Court gets --

15          THE COURT:  Okay.

16          MR. DUTCH:  And in -- I just somewhat turn my

17     attention more specifically to some of these relatively

18     recent -- and I'm not exactly sure why some of them

19     pertain exactly to the client.  So for purposes of

20     today, I just would like to lodge an objection and I can

21     indicate for No. 2 where it says "refrain from incurring

22     new credit charges," I don't know why that would be

23     relevant when Mr. Valley is on supervision.

24       I've got two other ones as well.  Should I just let

25     you know?

1          THE COURT:  Well, the reason that's relevant is

2    that that's a good indication of what he's doing with

3    his money and if he's purchased -- using the credit card

4    or new credit card, trying to get a different one in

5    order to buy pornographic images, that would be

6    significant.

7          MR. DUTCH:  Okay.  Then on No. 6 where it says

8    that "the probation office is authorized to install any

9    application as necessary on such device owned or

10   operated by defendant and shall randomly monitor those

11   media," again I would object to that as being overbroad.

12   Vague.  I'm not sure why it's particular to Mr. Valley

13   for that particular component of that.

14         THE COURT:  Not in this case, Mr. Dutch.  This

15   is an absolutely necessary condition for somebody who

16   has engaged in the criminal activities that Mr. Valley

17   has.  Now, we don't know what the computer devices are

18   going to be when he's on probation or supervised

19   release, but the point is that the only way that the

20   probation office can supervise Mr. Valley is to know

21   what he's watching and looking at, working on on

22   whatever devices he has.

23         MR. DUTCH:  And the last one would be No. 8.

24   I'm sure the Court has dealt with this one before.  "Not

25   associate with any person under the age of 18."  Again,

1    it appears overbroad.  I think I understand given the

2    charges of this why it might be there.  I obviously am

3    concerned about family members, things of that sort.  So

4    I would just indicate that would be my final concern and

5    objection.

6             THE COURT:  I think it definitely applies to

7    family members.

8             MR. DUTCH:  Then, Judge, I have reviewed it.  I

9    have -- we filed one objection in regards to the

10   computer, and then I'm not sure -- I believe the

11   government also filed an objection to the report as

12   well.  Thank you.

13            THE COURT:  And Ms. Altman, for the record

14   you've read the presentence report and you had one

15   objection; is that correct?

16            MS. ALTMAN:  That is correct, Your Honor.

17            THE COURT:  And that was to the two-level

18   increase for the attempted obstruction of justice while

19   Mr. Valley was awaiting sentencing or right after he was

20   arrested.

21            MS. ALTMAN:  Shortly after he was arrested,

22   Your Honor, yes.  We believe that his behavior from the

23   jail certainly was obstruction; that the two-level

24   increase is warranted, and then acceptance -- should not

25   get a reduction for acceptance of responsibility because

1    of the obstructing enhancement and there being no

2    special circumstances that would allow for the reduction

3    when he has obstructed.

4         He sent letters instructing his girlfriend to

5    destroy evidence.  He provided step-by-step instructions

6    to log into his accounts and to delete profiles and

7    information.  More troublingly he sent letters

8    instructing her to write a letter making it look like

9    her father was confessing to the crime and setting him

10   up and framing him.  In the government's view, those

11   actions were an attempt to impede his prosecution.

12        I understand that the guideline change, whether it

13   be two levels or two plus and minus two don't impact

14   necessarily his guideline range since it is already so

15   high, but I don't think that's a factor that should be

16   considered.  I think that the facts should be considered

17   and the facts in this case certainly warrant that

18   enhancement.

19             THE COURT:  Thank you.  Mr. Dutch, anything you

20   wish to say about that?

21             MR. DUTCH:  Judge, I would just -- I think -- I

22   agree with the probation officer's explanation of this.

23   I don't think this was reasonably probable.  I would

24   just quote *US v. DeLeon*, 603 F.3d 397, Seventh Circuit

25   2010, where the court says all that is -- "what is

1  required for obstruction of justice is that the act

2  could affect to some probability the outcome of the

3  judicial process."  I don't think in this case it does,

4  and unless the Court has specific questions, we would

5  just defer to the probation department on this as well.

6          THE COURT:  All right.  I am not going to give

7  the two-level increase, although I certainly find

8  Mr. Valley's actions misguided, even stupid.  He

9  instructed his girlfriend to delete account profiles

10 from his computer and the computer had already been

11 seized, and he also asked her to write a letter that

12 would make it appear someone else was confessing to the

13 crime, and that was probably beyond her ability to do

14 successfully.  And as Ms. Altman has already pointed

15 out, adjusting the offense level upward for obstruction

16 of justice would not change the advisory guideline

17 range.

18     All right.  And then as far as the use of the

19 computer, it is ordinarily my practice not to give two

20 points for use of computer because that's an ubiquitous

21 behavior.  In this case, however, Mr. Valley used the

22 computer specifically to allow him to communicate in the

23 persona of various men and to produce pornographic

24 images and I think that's an entirely different kind of

25 situation.  This is not just sitting down at the

1  computer and typing in what you need to type to get

2  images.  This was -- took it far beyond that.  So I'm

3  denying both objections, one by the government and the

4  one by the defendant.

5      Ms. Altman, is there anything you wish to say about

6  sentencing?

7          MS. ALTMAN:  Yes, Your Honor.  Before I do that

8  though, it is our position that if the Court is granting

9  the two-level reduction for acceptance, I would move for

10  the additional one level.  I don't believe that's

11  factored in the presentence report, but he did plead and

12  he did give us notice, and so we believe that if the

13  Court is giving the first two, we should bring the

14  motion for the third point.

15          THE COURT:  Thank you.  Again, that's not going

16  to make any difference in the offense level -- the

17  guideline range I should say.

18          MS. ALTMAN:  And so then moving on to my

19  sentencing argument, there's a couple things I would

20  like to focus on.

21      First with regard to Docket No. 88 and the

22  sentencing brief and memorandum, it indicates in the

23  first paragraph, it focuses exclusively on the flawed

24  methodology used to create sentence guideline 2G2.2 and

25  why this provides reason for the Court to vary downward

1  from the applicable sentencing guidelines.

2      These are arguments we've seen before about regard

3  to 2G2.2.  It relates to distribution of child

4  pornography.  I recalculated the guidelines if you

5  ignore 2G2.2 and figure them out using only 2G2.1, which

6  does not have the same alleged flaws or there certainly

7  has not been the same arguments --

8          THE COURT:  Wait a minute.  I need to get my

9  book so I can follow along with your argument.  And

10 perhaps --

11         MS. ALTMAN:  It's a short argument.

12         THE COURT:  -- for the benefit of other people

13 in the courtroom who don't know the terminology that

14 you're using, it would help if you gave a little

15 explanation.

16         MS. ALTMAN:  Yes, Your Honor.  The guidelines

17 in this case were calculated using the guidelines for

18 2G2.2, which is the distribution of child pornography,

19 and 2G2.1, which is the production of child pornography.

20 As the Court is aware, and obviously Mr. Dutch is aware

21 and because of the brief that's been filed, 2G2.2 has

22 recently been the subject of many attacks as to the

23 enhancements that are part of 2G2.2 and empirical data

24 and things like that.  So because he started out by

25 attacking 2G2.2, the distribution, I recalculated the

1    guidelines using only production, taking the attacked

2    guideline off the table.

3              THE COURT:  I see.

4              MS. ALTMAN:  And I did check my calculations

5    with Ms. Baker because she is certainly much more

6    familiar with the guidelines than I am, and if you were

7    to use only 2G2.1, that is totally discarding the

8    distribution guideline and factoring in the production

9    for each of these girls, he still ends up at a level 41

10   as his offense level, minus three for acceptance, which

11   the Court has now indicated he should have, which puts

12   him, even just using a production, at 235 to 293,

13   certainly encompassing the maximum in this case.

14       So should the Court find the issues with 2G2.2 and

15   the arguments raised in that brief to be valid, the 240

16   months which the government is seeking as a sentence is

17   still within guidelines used only production.

18       The second thing I would like to -- does the Court

19   have any questions on that?

20             THE COURT:  No, I don't.  Thank you.

21             MS. ALTMAN:  Okay.  Thank you.  The second

22   thing I'd like to comment on is the idea that the

23   defendant's mental illness is a mitigating factor.

24   First of all, while he may have had some diagnosis as a

25   child, and even that has been called into question by

1  Dr. Scrons (ph) in his evaluation by BOP, his most
2  recent diagnosis in his evaluation done at BOP found his
3  presentation to be more consistent with a personality
4  disorder than a mood disorder; found him to be angry and
5  immature.  He provided contradictory stories.  He told
6  grandiose tales.  It detailed that his treatment records
7  showed no indication of psychosis or thought disturbance
8  but rather he had behavioral problems.

9      The evaluator found that "the psychological testing
10 reviewed his answers reflected he may be attempting to
11 exaggerate symptoms of mental illness or may reflect on
12 attention-seeking personality style."

13     It went on to say, "although his offense involved
14 the creation of personas, the evaluator did not believe
15 the defendant exhibited symptoms consistent with
16 dissociative identity disorder.  Rather the evidence
17 indicated that these alter identities were part of his
18 clever and very organized ruse to manipulate his
19 items -- his victims and create a convenient cover story
20 for himself.  These behaviors are not consistent with
21 those of a confused or mentally ill individual.  Rather,
22 they are suggestive of practice prevarication," which
23 also opined, as I alluded to earlier, that in retrospect
24 earlier reports of hearing voices and having
25 conversations with his stuffed animals, which at the

1  time was interpreted as psychotic, may have been the

2  beginning of his pattern of fantastical lying.  So to

3  the extent that there is mental illness, it does not

4  appear to mitigate the conduct in this case.

5      Additionally, the mental illness, such as it is in

6  this report as described by BOT -- BOP, makes him more

7  dangerous in that it described that he was calculating

8  and organized and those type of things.  Manipulative.

9  So that makes him more dangerous.  It certainly is not a

10 mitigating factor.

11     Additionally, as alluded to in the mental health

12 report, the BOP analysis, there's no indication in his

13 criminal conduct of mental illness, and in fact, it's to

14 the contrary.  The defendant maintained an intricate

15 computer filing system to store images that he received.

16 He had a file for each victim where he listed the

17 victim's name, the age.  It was broken into nudes,

18 nonnudes, and for each victim he had that.  And it also

19 included notes about who he was pretending to be when he

20 was communicating with them and who they were.

21     For instance, some would say "Sam's girlfriend."

22 Some would say "Alan's girlfriend."  All maintained

23 meticulously so that his scheme wasn't discovered when

24 he was not able to maintain the persona that he was with

25 these people.

1       Additionally, the files were well organized and

2   backed up on CDs, again indicating his organization, his

3   control of the situation.  The defendant had contact

4   with approximately 60 minor girls who sent him nude

5   pictures.  The majority of them are still unidentified

6   and probably won't be identified.  This is certainly an

7   aggravating factor that the Court could consider,

8   particularly since it isn't included and couldn't be

9   included in a way in the guideline calculation.

10      As the Court is aware, only five additional levels

11  for grouping are allowed, so none of the other victims

12  could be included as he already -- I guess one could

13  because he received four levels for grouping.  But the

14  majority of them could not be included in anything

15  because of the rules of the sentencing guidelines.  So

16  the guideline calculation, as high as it is, still

17  significantly underrepresents his criminal conduct when

18  you consider all of the victims in this case.

19      This case came to law enforcement attention because

20  the defendant was distributing child pornography through

21  peer-to-peer programs.  The images would prepubescent.

22  They showed bondage.  There were obviously over 600 of

23  them.  From there, as the Court is aware, the search

24  warrant was executed and the full extent of his criminal

25  behavior was discovered.  Numerous computers, media,

1 thumb drives, and perhaps more alarming, rope and

2 handcuffs.

3      The gist of the scheme is that the defendant would

4 pose as a teenage boy.  He would befriend teenage girls

5 through social media sites.  He convinced them to be

6 this teenage persona's girlfriend, either Sam or Alan

7 were the two he used commonly, and then acting as their

8 teenage boyfriend, he convinced them to send him

9 pornographic pictures and videos.  If a girl would show

10 up to meet her supposed boyfriend, the defendant would

11 show up.

12      The defendant used these opportunities, it is

13 alleged, to assault, physical assault at least two of

14 the victims.  CB reported that she had been sexually

15 assaulted by the defendant in his home after she went

16 there at Alan's direction after she was unable to stay

17 at a friend's house.  I understand that the presentence

18 report says this is uncorroborated, but that is what she

19 reports, and while it is uncorroborated, it has not been

20 shown to be not true either.

21      Victim NV met the defendant at Brat Fest when she

22 was supposed to meet Alan and Sam there.  The defendant

23 attempted to fondle her breasts and genital area at Brat

24 Fest.  So he did use these opportunities to physically

25 assault some of these girls, and this certainly isn't a

1   case anyone could argue there was no hands-on behavior.

2         In addition to the physical assaults in this case,

3   there was mental abuse and manipulation of these girls.

4   Each of these girls thought that the defendant was their

5   boyfriend.  These are 15, 16 and younger age girls.  Not

6   only was he not their teenage boyfriend, he was also

7   giving them information that certainly would cause any

8   teenage girl great angst.  For example, he told CB that

9   Alan, who she thought was her boyfriend, had been

10  stabbed and was in a coma.  He told CB that he himself

11  was dying.  There was another situation where two of the

12  girls were supposed to go to prom with Sam and Alan, but

13  of course Sam and Alan never showed up because there was

14  no Sam or Alan.  Now the girls know now that there was

15  no Sam and Alan, but at the time they're dressed for

16  their prom.  They're teenage girls and then their prom

17  date, who doesn't exist, isn't showing up.  It's

18  devastating to a teenage girl.  Essentially that is what

19  the defendant did to each of these girls.

20        Whether they knew it as they do know, the victims

21  we were able to identify, or the ones that don't know

22  it, they may not know now that he doesn't exist, but he

23  certainly left all of these teenage girls thinking well,

24  what happened to my boyfriend.  He devastated these

25  girls.  He took something from them that they can never

1    ever get back; can't be explained to them, and for that

2    reason, Your Honor, the defendant deserves the maximum

3    sentence this Court can impose, the 40 years maximum

4    between the two counts.  Thank you.

5              THE COURT:  Thank you.  Mr. Dutch.

6              MR. DUTCH:  Yes.  Thank you, Judge.  I have

7    tried to put forth in my sentencing memorandum really my

8    thoughts in regards to this case.  It's been -- it's

9    been a complex and a, I guess for lack of a better term,

10   an interesting representation of myself and Mr. Valley.

11       When I began my representation with Mr. Valley over

12   a year ago, I was trepid, to say the least.  Mr. Valley

13   was a difficult person at that time for me to deal with

14   on a personal level.  I actually had apprehensions when

15   I would speak with him in the jail.  He was prone to

16   outbursts, prone to grandiose stories about himself and

17   his life.  And I was going through some of my notes,

18   Judge, when -- in anticipation for today's sentencing

19   and I came across some notes in regards to the mental

20   competency that Ms. Altman made reference to, that

21   report.

22       As the Court is aware, that report was just for

23   Mr. Valley as to whether he was competent to stand trial

24   and also there was a component there of whether he might

25   be unable to be found guilty because of reason of mental

1  disease or defect, which the author of that report came

2  to the conclusion, and we agreed, Judge, that he was not

3  incompetent.  But to say, as Ms. Altman says,

4  questioning Mr. Valley's mental illness, I was taken

5  back a little bit.  I mean one does not have the

6  childhood history that I laid out in my sentencing

7  memorandum of Mr. Valley and of his going from one

8  mental institute hospital to the other as a nine-year

9  old, as a ten-year old, if he did not have severe mental

10  illness that was diagnosed by trained psychiatrists who

11  were his treating physicians and not someone from the

12  Bureau of Prisons who saw him for an hour or two.

13      But going back, I was prepared to put on a hearing

14  for his mental competency before I had an opportunity to

15  go over in detail that report with Mr. Valley where he

16  agreed that he was competent to proceed.  And I had

17  questions written down for the doctor, including

18  questions of -- that he does not trust his lawyers; that

19  I note that I cannot follow Mr. Valley many times, his

20  train of thought; his conversation is not something that

21  I understand; that he interjects names and associates

22  that do not exist; that in the middle of a conversation

23  he goes off, and there's grandiose stories.  He seems to

24  focus on trivial issues and it's hard for him to see the

25  big picture.  These were all questions, Judge.  I note

1   that he gets very angry very quick and loses all focus

2   when he gets angry.  These are all questions I had for

3   the doctor at that time.

4       And upon reflection, long hard reflection, since

5   that time that I've gotten to know Mr. Valley, and I

6   think more important since he now seems to be controlled

7   with medication, my conversations with Mr. Valley I

8   actually look forward to.  We don't just talk about the

9   case and we don't talk about what to expect from this

10  Court, we talk about things about his family.  He asks

11  me questions about my practice and about other areas of

12  practice I'm in.  When he calls, I tell my secretary to

13  make sure you put Mr. Valley through right away.  I want

14  to speak with him.

15      I'm not sure I'm going to be able to convey to the

16  Court how significantly Mr. Valley has changed since the

17  person that Ms. Altman has set forth and has brought to

18  your attention because we can't -- I can't speak for the

19  victims.  I think I mentioned in my sentencing memo, I

20  think Mr. Valley would, you know, down the road somehow

21  like to be able to work out through therapy how he might

22  apologize.  I spoke to Ms. Altman that none of the young

23  ladies had submitted anything, so we were not able to

24  address them specifically.  But I think that what this

25  shows for me is that Mr. Valley is in a position, with

1  proper medication -- his mental illness is as

2  significant, Judge, as if someone was sitting here with

3  Downs Syndrome and that -- but he was functional and he

4  could work a computer.  There's no difference except he

5  looks different.  He has had such, such significant

6  trauma as a child.  Everything from the death -- the

7  abandonment of his father, the death of his grandfather

8  when he's nine years old, abusing his body, people

9  abusing his body, going from foster home to foster home,

10 from mental institution to mental institution,

11 commitment to commitment, that is to say that Mr. Valley

12 is not in -- does not have a severe mental health issue

13 and should not be mitigated by that mental health factor

14 would be to me looking at this with jaundice eyes.  And

15 it may be yes, he has a mental health illness, but still

16 he did this, and so we should really focus in on

17 punishment as opposed to rehabilitation and allowing an

18 ability for him to get into the community at some point

19 in time to be able to be supervised in the community

20 with treatment and with -- and with medication.  But I'm

21 hoping that the Court can see good in Mr. Valley,

22 understanding and acknowledging what happened and what

23 those girls must have gone through.

24     But I just -- you know, as I said, I put everything

25 in, but I just have problems that we should not

1  institutionalize for a significant period of time the

2  mentally ill, Judge.  We're better than that.  Thank

3  you.

4          THE COURT:  Thank you.  Mr. Valley, is there

5  anything you wish to say on your own behalf?

6          THE DEFENDANT:  I would like to say that I am

7  truly sorry for the things that I have done and that if

8  the Court is willing to forgive me for my problems that

9  I've had with texting people and getting stuff from

10  them, that I will change if I get a reasonable

11  sentence -- well, regardless whether I get a reasonable

12  sentence or not I'll still change my ways.

13      I'll stay on medication just so I can be a better

14  person.  And that's all I've got to say.

15          THE COURT:  Thank you.  Mr. Valley, this is a

16  very difficult case.  Mr. Dutch makes a good argument

17  for treating you differently because of your mental

18  illness and the problems that you've had as a child,

19  difficulties that your mental problems caused you and

20  your mother and the things that happened to you.  At the

21  same time, I'm looking at somebody who is a definite

22  danger to women in this society.  The number of girls

23  that you got involved with, either in ways that were

24  completely inappropriate and illegal is staggering.  I

25  see a lot of pornography cases, but generally they are

of images, the distribution of images, receipt of
images.

    You were producing images.  You were talking young
girls into posing for lewd pictures of themselves, their
sexual organs.  You know, I don't know what kind of
girls you happen to connect with, but certainly they
were very susceptible to the kind of statements that you
were making to them and what you were asking them to do.

    I realize that you have mental problems and that
you've been struggling with a lot of either mental
illness or behavioral disorders, but I have to think of
the danger that you present to the community.  As far as
I can tell, you are a conniving, manipulative,
self-absorbed young man and that despite everything that
your mother did for you in bringing you up, and it seems
to have been a heroic effort, you are still consumed
with what you yourself want and that whatever steps you
need to take, whatever effect those steps will have on
other people, you're going to take because you want to
gratify yourself.

    You had no concern for your girlfriend when you
were engaging in these interchanges with other young
girls.  You had no concern for your mother who was
providing you a place to live, along with your
girlfriend.  It would be wonderful if there were some

1   kind of mental institution that was capable of dealing

2   with you and with other people that have problems like

3   yours.  Unfortunately, sadly, we don't have those kinds

4   of institutions.  We don't have those organizations that

5   could protect the community and in a way that would be

6   more helpful to you than a term of imprisonment.

7       The question is do I say I really feel sorry for

8   your problems and you don't -- you're not going to get

9   any better in prison, so I should keep you out or give

10   you a short-term?  How do I look at all the girls out

11   there that are potential victims of yours?  They deserve

12   protection, and the only way I know of to protect them

13   is to put you in custody.  I wish for your sake and

14   particularly for your mother's sake, because I can tell

15   that she's -- this has been an agonizing time for her,

16   but I don't see any other option.

17       I accept the plea agreement on the basis of my

18   findings that the offense of conviction adequately

19   reflects your criminal conduct and the plea agreement

20   does not undermine the statutory purposes of sentencing.

21   In determining your sentence, I will take into

22   consideration the advisory guidelines and the statutory

23   purposes of sentencing set forth in 18 United States

24   Code, Section 3553(a).

25       The probation office has prepared the advisory

1  guideline calculations correctly using the current

2  manual.  The guidelines would not change if the

3  probation office had used earlier versions of the

4  guidelines.  I've dealt with the government's objection

5  to not giving you a two-level increase for obstruction

6  of justice.  The calculations take into account all

7  relevant conduct as well as stipulated conduct related

8  to Counts 1-6 of the Indictment.

9     Your conduct is subject to the grouping rules and

10 multiple count analysis under Section 3D1.2 and 3D1.4,

11 and I apologize, this will be incomprehensible to

12 anybody who hasn't been working with it for years, but I

13 have to go through it.

14    Group 1, Counts 1 and 2 of the Information which

15 are the counts of conviction, and Counts 2 and 3 of the

16 Indictment which are stipulated conduct, are grouped for

17 guideline calculation purposes.  The base offense level

18 is 22.  Two levels are added because your relevant

19 conduct involved the possession and distribution of

20 images of prepubescent minors.  Because you distributed

21 images to a case agent, two levels are added.

22    Your relevant conduct involved images of bondage in

23 adult men penetrating the vaginas of prepubescent

24 minors.  Those images portrayed sadistic or masochistic

25 conduct or violence.  Therefore, four levels are added.

1      Your conduct involved the production of child

2 pornography for more than one victim.  Accordingly, five

3 levels are added because your conduct involved a pattern

4 of sexual exploitation of minors.  Two levels are added

5 because you used a computer or interactive computer

6 service to solicit minors to produce child pornography

7 and to distribute and receive images of child

8 pornography.  As I said, I ordinarily don't give a

9 two-level enhancement for use of a computer, but in this

10 case the use was for producing pornography images.

11      Five levels are added because your relevant conduct

12 involved more than 600 images.  The adjusted offense

13 level is 42.  And I note that if I had used the approach

14 that Ms. Altman went over, the offense -- let me just

15 check one thing --

16           MR. DUTCH:  38, I believe.

17           THE COURT:  So Ms. Altman, you were figuring

18 that the guideline range would be 38; is that correct?

19           MS. ALTMAN:  With acceptance, yes.

20           THE COURT:  With acceptance.

21           MS. ALTMAN:  41 minus 3, yes.

22           THE COURT:  Right.  Okay.  Anyway, the advisory

23 guideline range would be 235 to 295 months.  Group 2,

24 the guideline for Count 1 of the Indictment, a violation

25 of 18 United States Code, Section 2251(a) is 2G2.1.  The

base offense is 32.  The victim was 13, so two levels

are added because she was at least 12 but younger than

16.  Two levels are added because you used a computer to

solicit a minor to engage in sexually explicit conduct.

The adjusted offense level is 36.

Group 3.  The guideline -- the base offense level

is 32.  The victim was 15.  So two levels are added

because the victim was at least 12 but younger than 16.

Two levels are added because you used a computer to

solicit a minor to engage in sexually explicit conduct.

The adjusted offense level is 36.

And the same thing would apply for Count 5 of the

Indictment and for Count 6 of the Indictment, except

that as to Group 5, the base offense level is 32.  With

two levels added, the adjusted offense level is 34.

Three levels are added to the offense group with

the highest adjusted offense level, which is 42, with a

total adjusted offense level of 45.  You had several

additional known victims and approximately 50

unidentified victims.  Each minor sexually exploited is

to be treated as a separate count of conviction, whether

or not charged or convicted.  You had victims who were

not considered in the guideline calculations because you

had the offense level points contemplated by the

guidelines.  So, ever I'm taking the additional conduct

1  into consideration in sentencing.

2     You'd qualify for a three-level downward adjustment

3  because you've demonstrated acceptance of responsibility

4  for your offense as evidenced by your timely plea, as

5  well as your admission of guilt during the plea hearing,

6  and the government has moved for the additional

7  reduction.

8     Ordinarily with a total offense level of 42 and a

9  criminal history category of 1, you would have a

10 guideline imprisonment range of 360 months to life.  But

11 the statutory maximum term of imprisonment is 20 years

12 for each count.  Therefore, the guideline imprisonment

13 term is 480 months.

14    You were raised by your mother, who from all

15 accounts did her best to care for you and to obtain help

16 for you.  You had little contact with your father.  Your

17 grandfather was your only male role model, but he died

18 when you were only nine and that no doubt exacerbated

19 your behavioral and mental health problems.

20    You were unable to attend school for any length of

21 time because of your mental health problems.  You have

22 limited work history.  You're supported by disability

23 benefits.  You have a history of using controlled

24 substances.

25    Your criminal history includes three convictions

1  for disorderly conduct that were reportedly related to

2  domestic disputes with a prior girlfriend.

3      After law enforcement agents became aware that you

4  distributed images of child pornography online through

5  peer-to-peer networks, they executed a search warrant at

6  your mother's residence where you lived and seized

7  computers and related equipment.  Through further

8  investigation and forensic analysis of the computer

9  equipment, agents became aware that your scheme extended

10 beyond the typical case involving the possession,

11 distribution or receipt of child pornography.

12      Using the personae of teenage boys, you had been

13 soliciting minor girls online for the purpose of

14 producing child pornography.  You developed so-called

15 relationships with the girls, sent them photos of your

16 genitals and instructed them to send sexually explicit

17 photos of their own genitals.  You posed as the uncle of

18 your various personae to meet some of the girls in

19 person for the purpose of engaging in sexual

20 intercourse.  You maintained an intricate computer

21 filing system to store images you received and kept

22 notes about the conversations you had with each girl.

23 You also lured girls to your home under the proposition

24 that they would do modeling for you and that you

25 operated a modeling agency.

1    You have a history of grandiose thinking and

2  fabrication of stories about your life.  You are

3  calculated, manipulative and deceitful in your actions,

4  preying on young girls for your own sexual

5  gratification.  This predatory conduct demonstrates your

6  dangerousness to the community.

7    Taking into consideration the nature of the offense

8  as well as your personal history and characteristics, as

9  well as the fact that your guideline term of

10  imprisonment greatly exceeds the statutory maximum, I'm

11  persuaded that a custodial sentence of 40 years is

12  reasonable and no greater than necessary to satisfy the

13  statutory purposes of sentencing.  Such a sentence will

14  serve to hold you accountable, protect the community,

15  and provide you the opportunity for rehabilitative

16  programs and achieve parity with the sentences of

17  similarly-situated offenders.

18    As to Counts 1 and 2 of the Information, it is

19  adjudged that you are committed to the custody of the

20  Bureau of Prisons for a term of 240 months on each

21  count, with the term of imprisonment on Count 2 to run

22  consecutively to the term imposed on Count 1.  I

23  recommend that you receive the opportunity to

24  participate in sex offender treatment as well as

25  educational and vocational training.

1    I further recommend that you be afforded the

2    opportunity for pre-release placement in a residential

3    re-entry center with work release privileges.  The term

4    of imprisonment is to be followed by a life term of

5    supervised release subject to the standard conditions.

6    In light of the nature of the offense and your

7    personal history, I adopt the special conditions set out

8    in the presentence report.  Neither party has raised any

9    objection -- well, I'm sorry.  Mr. Dutch has raised

10   objections and I've dealt with them.  I believe that all

11   the conditions are appropriate in this instance.

12   Although this offense is not drug related, you have

13   a history of using controlled substances before engaging

14   in sexually explicit conduct.  Therefore, the mandatory

15   drug testing requirement is not waived.  You shall

16   submit to one drug test within 15 days of your release

17   from custody and at least 10 periodic tests thereafter.

18   It is adjudged that you are to pay a $200 criminal

19   assessment penalty to the Clerk of Court immediately

20   following sentencing.  No restitution will be ordered

21   because none of the victims in this case have made any

22   request for restitution.

23   You do not have the means to pay a fine without

24   impairing your ability to support yourself and pay

25   restitution upon -- that's not right.  There's no

1  restitution.  Probation office is to notify local law

2  enforcement agencies and the State Attorney General of

3  your release to the community.  And then I've ordered --

4  I've entered a final order of forfeiture for the

5  property seized from you and identified in the

6  forfeiture order.

7       Anything else in this case, Ms. Altman?

8          MS. ALTMAN:  No, Your Honor.  Thank you.

9          MR. DUTCH:  Judge, I noticed that there was a

10 report and recommendation by the Magistrate in regards

11 to some motions that we filed and I don't know if you've

12 adopted that yet, but I'm wondering if the Court could

13 draw its attention because I believe -- part of the

14 appeal process will be --

15         THE COURT:  Oh, I will deal with that promptly.

16         MR. DUTCH:  Thank you.  And then I would ask

17 that the Court consider having Mr. Valley placed in a

18 facility close -- as close to home as possible, and I

19 actually would consider the Court or ask the Court to

20 consider a medical facility for Mr. Valley.

21         THE COURT:  Oh, I wouldn't get anywhere

22 recommending that, but I will recommend the placement

23 close to home.

24         MR. DUTCH:  Okay.  I think that was the two

25 issues that I had.

1      THE COURT:  Okay.  I have recommended medical

2   facilities in the past and those recommendations are not

3   worth the paper they're written on unfortunately.  The

4   Bureau of Prisons -- and it has its own standards and

5   its own concerns to worry about.  But I'm sure that if

6   the Bureau picks up on it, it will act on it and make a

7   decision based on what it thinks Mr. Valley needs.

8      MS. ALTMAN:  Thank you.

9      THE COURT:  Court will recess.

10      (Proceedings ended at 1:52 p.m.)

11

12                      *  *  *  *  *

13      I, LYNETTE SWENSON, Certified Realtime and Merit
    Reporter in and for the State of Wisconsin, certify that
14   the foregoing is a true and accurate record of the
    proceedings held on the 14th day of August 2013 before
15   the Honorable Barbara B. Crabb, District Judge for the
    Western District of Wisconsin, in my presence and
16   reduced to writing in accordance with my stenographic
    notes made at said time and place.
17   Dated this 5th day of September 2013.

18

19                      /s/_____

20                      Lynette Swenson, RMR, CRR, CBC
                            Federal Court Reporter

21

22

23   The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means
24   unless under the direct control and/or direction of the
    certifying reporter.

25