In the

# United States Court of Appeals

## For the Seventh Circuit



CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 13-2870

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS R. VALLEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:11-cr-00133 — **Barbara B. Crabb**, *Judge.*

ARGUED APRIL 29, 2014 — DECIDED JUNE 18, 2014

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

PER CURIAM. Thomas Valley, who is 29, posed on the
Internet as a teenage boy and persuaded more than 50 under-
age girls to send him sexually explicit photos of themselves. He
also convinced at least one of those girls to meet in person for
sex. Authorities had learned that Valley was using Internet file-
sharing software to distribute child pornography and discov-
ered the photos received from the girls while executing a state

search warrant at his mother's home, where he lived. Valley made incriminating statements during the search and, after his indictment, unsuccessfully moved to suppress those statements and the fruits of the search. He entered conditional guilty pleas to two counts of receiving child pornography, 18 U.S.C. § 2252(a)(2), reserving his right to challenge on appeal the adverse rulings on his motions to dismiss. Valley contests those rulings and also argues that his sentence is unreasonably long. We reject his contentions and affirm the judgment.

## I. BACKGROUND

Valley was charged by indictment with six counts of producing child pornography, 18 U.S.C. § 2251(a), but by agreement with the government pleaded guilty to an information charging two counts of receiving child pornography, *id.* § 2252(a)(2). As part of his plea agreement, Valley stipulated that his production of child pornography, as alleged in the six counts of the indictment, would be treated as additional counts of conviction.

At the start of the case, Valley's attorney had moved for a competence evaluation based on the defendant's history of mental-health issues. The examining psychologist concluded that Valley, although a grandiose liar, did not suffer from any mental illness which jeopardized his view of reality. After the psychologist issued her report, Valley's public defender was permitted to withdraw, and substitute counsel was appointed. The new lawyer (who continues to represent Valley on appeal) then filed motions to suppress Valley's incriminating statements and the fruits of the search.

No. 13-2870                                                    3

Valley's motion to suppress the evidence from the search was decided without an evidentiary hearing. That motion was based on information in the affidavit accompanying the application for the search warrant. Valley argued that the warrant was stale because it was not obtained until eight months after investigators last downloaded child pornography from his computer using file-sharing software. The defendant also argued that the supporting affidavit "lacks particularity" and is "overbroad" because, as he reads it, the affidavit does not explain how the agents identified his Internet-protocol ("IP") address, name the software used to locate the images on Valley's computer, or disclose which image first was traced to his computer. In the affidavit Special Agent Christopher DeRemer describes his familiarity with forensic computer examinations and peer-to-peer file sharing. According to Agent DeRemer, in September 2010 he and Agent Vern Vandeberg downloaded files containing child pornography from a computer utilizing an IP address assigned to Kay Jenson (Valley's mother) at her home address in Madison, Wisconsin. A Dane County judge on May 31, 2011, issued a warrant to search computers, digital-storage devices, and other related items found at that address, and the next day state authorities executed the warrant.

A magistrate judge conducted an evidentiary hearing on Valley's motion to suppress his statements. Special Agent Jesse Crowe, who participated in the search, testified that he and six other state agents, wearing raid jackets but otherwise in plain clothes, along with two uniformed Madison police officers, knocked and announced their presence at a house at the address given in the warrant but received no response. The

door was unlocked, so the agents and officers entered but found no one on the first floor. In the basement, however, they found Valley and his pregnant girlfriend, both awake. The authorities handcuffed Valley for about 10 minutes while they secured the rest of the house; his girlfriend was not restrained and was escorted outside. Once the house was cleared, Valley was uncuffed and allowed to dress.

According to Agent Crowe, Valley was watched the entire time to assure the safety of the law-enforcement officers, but he was told he was not under arrest and could leave at any time. He smoked, drank sodas, and used the bathroom, and he would have been allowed to eat had he asked. Valley cooperated, Crowe testified, by identifying his computers and diagraming his file-storage system. And, the agent maintained, Valley never declined to answer questions, nor did he express a desire to contact an attorney or leave the premises. At one point during the search, Valley apparently experienced an anxiety attack, though Agent Crowe did not recall him becoming physically ill. At another point, the agents found what appeared to be an explosive device; the record discloses little on this subject, but apparently the bomb squad responded and handled the object without incident.

The search lasted approximately 5½ hours, Agent Crowe explained, because of the many computers and storage devices. Valley conversed with the agents and answered questions for much of that time, though not exclusively about the investigation. At first Valley led the agents to believe that a nephew named "Alan" had downloaded the child pornography linked to his mother's IP address. After speaking more with Valley and his girlfriend, however, the agents concluded that "Alan"

No. 13-2870                                                         5

did not exist and that Valley was the culprit. Agents arrested him that evening.

Valley was the only other witness at the evidentiary hearing, and his version of events differed greatly from that of Agent Crowe. The defendant said that the agents woke him, guns drawn, and refused his requests to see the search warrant, call an attorney, and eat. The agents "constantly" questioned him "for a good majority of the time," said Valley, and would not allow him to sleep, watch television, or listen to music. He acknowledged being told he could leave but insisted that this information was conveyed two hours into the search, and he felt "trapped," not free to leave. Valley also maintained that "Alan" is a real person, though not his nephew as he had told Agent Crowe. He could not give Alan's last name or age but did describe him and how they met. Valley suggested that Alan had used his computer and his mother's internet connection to download the child pornography.

After the evidentiary hearing, Valley filed a memorandum in support of the motion to suppress his statements. He argued that no reasonable person in his position would have felt free to leave during the search, and thus, in his view, he was in custody the entire time and should have received *Miranda* warnings. And though he added no details on the subject, Valley also argued that the bomb squad's presence was a "major event" which reinforced his belief that he was not free to leave.

The magistrate judge, in recommending that Valley's motions to suppress be denied, disagreed with the defendant's contention that the affidavit in support of the search warrant

does not explain why the investigating agents targeted the IP address he was using. The magistrate judge also explained, however, that the reason for focusing on the particular IP address did not matter. An agent had used peer-to-peer software to troll for known child pornography on systems offering those files for sharing; the agent downloaded and reviewed several files to confirm their illicit content before serving the Internet Service Provider with a subpoena—a "constitutionally uncontroversial" step, according to the magistrate judge—to discover the account associated with the IP address from which the child pornography originated. The judge also concluded that Valley's was not an exceptional case like others where a staleness challenge has been successful. Last, because of the obvious relevancy of the items listed in the warrant ("Computers," "Computer input and output devices," including "keyboards, mice, scanners, [and] printers"), the judge concluded that the warrant was not facially overbroad or lacking particularity. The judge also noted that the good-faith exception, *see United States v. Leon*, 468 U.S. 897 (1984), likely would apply even if the affidavit supporting the warrant was problematic.

The magistrate judge, addressing Valley's incriminating statements, reasoned that Valley was an "incorrigible fabulist," whose testimony was "intentionally self-serving" and not credible. A reasonable person, the judge explained, would not have felt restrained or trapped if told he could depart at any time or refuse to answer questions. The judge noted that, although Valley had been monitored by agents during the search, the evidence showed that he was not in custody, making *Miranda* warnings unnecessary. Valley did not object

to the magistrate judge's report and recommendation, which the district judge adopted.

For the counts of conviction, the probation officer calculated an adjusted offense level of 42, including a 2-level increase because a computer was used in committing the crime, U.S.S.G. § 2G2.2(b)(6). The probation officer then added a multiple-count adjustment of 3 levels because Valley had stipulated to the production counts charged in the indictment, *see id.* § 3D1.4, and subtracted 2 levels for acceptance of responsibility, *see id.* § 3E1.1(a). The total offense level of 43, coupled with Valley's criminal-history category of I, yielded a guidelines imprisonment range of 360 months to life, capped at 40 years by the statutory maximum. *See* 18 U.S.C. § 2252(b)(1); U.S.S.G. § 5G1.1(a). Both sides objected to the calculations. Valley opposed the increase for using a computer because, he asserted, that offense characteristic is a feature of every child-pornography prosecution. The government insisted that Valley should not receive credit for acceptance of responsibility and, instead, should receive a 2-level increase for obstruction of justice based on letters he had sent to his girlfriend from jail; in those letters he instructs her to delete his online account profiles and write false confession letters. At sentencing the district court overruled both objections and credited Valley 3 levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, but otherwise adopted the probation officer's calculations and sentenced Valley to 20 years on each count, to run consecutively.

## II. ANALYSIS

On appeal Valley contests the denial of his two motions to suppress, first maintaining that he was in custody during the search and should have been given *Miranda* warnings. He points to his testimony—that he was seated on his couch in his underwear, denied a phone call to a lawyer, watched constantly, and escorted by agents at all times during the search—as evidence that no reasonable person would have felt free to leave.

The short answer ought to be that Valley waived any appellate claim about the adverse rulings on his motions to suppress because he never objected to the magistrate judge's recommendation that the motions be denied. *See* 28 U.S.C. § 636(b)(1); *United States v. Hall*, 462 F.3d 684, 689 (7th Cir. 2006); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003). But the government has missed this limitation on appellate review and does not argue waiver, so we will address the merits of Valley's arguments. *See United States v. Prado*, 743 F.3d 248, 251 (7th Cir. 2014); *United States v. Angle*, 234 F.3d 326, 335 n.11 (7th Cir. 2000).

First, Valley's custody argument has no merit. Whether he was "in custody" for purposes of *Miranda* depends on whether a reasonable person in the same setting would not have felt free to leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *United States v. Snodgrass*, 635 F.3d 324, 327 (7th Cir. 2011). The district court's ruling, based on the magistrate judge's recommendation, turned on the credibility of Valley and Agent Crowe, the only witnesses at the evidentiary hearing. The court's conclusion that Valley was a liar receives great defer-

ence. *United States v. Terry*, 572 F.3d 430, 434–35 (7th Cir. 2009); *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004). Valley says nothing to challenge the court's credibility assessment and instead cites his own testimony as if the judge had believed him and not Agent Crowe.

And the agent's testimony amply supports the rejection of Valley's attempt to suppress his incriminating statements. The agents never drew their guns or threatened Valley. He was told at the outset of the search that he was free to leave, he was allowed to smoke and drink sodas, and except for a few minutes while the house was being secured he was permitted to move about freely without restraints. As the district court concluded, a reasonable person in these circumstances would not have felt "trapped" or unable to leave. *Compare United States v. Littledale*, 652 F.3d 698, 701–02 (7th Cir. 2011) (concluding that defendant was not in custody when he confessed at campus police station because officers did not threaten, touch, or arrest defendant or unholster guns), *Snodgrass*, 635 F.3d at 327–28 (concluding that defendant was not in custody in laundry room of apartment building, since officers told him he was not under arrest and did not raise their voices, draw weapons, or restrain or threaten defendant), *and United States v. Salyers*, 160 F.3d 1152, 1160 (7th Cir. 1998) (concluding that defendant who never tried to leave while police questioned him in his kitchen was not in custody, since officers kept their weapons holstered, did not restrain or threaten the defendant, and told him he was not in custody), *with United States v. Slaight*, 620 F.3d 816, 818–20 (7th Cir. 2010) (concluding that defendant was in custody when 9 or 10 police officers arrived at his home with guns drawn, invited him to police station, and

while telling him he was not in custody proceeded to interro-
gate him for an hour in a "minute," windowless room).

Valley next challenges the denial of his motion to suppress
the fruits of the search. He maintains that the information in
the warrant (that in September 2010 illicit files were down-
loaded from his computer) was stale in May 2011 when the
warrant was issued and executed. He insists that the agents
lacked probable cause because they had no evidence that he
still possessed the images. And because of this purported lack
of probable cause, Valley concludes, the good-faith exception
does not save the warrant.

Valley misunderstands the good-faith exception, which is
not defeated by an absence of probable cause. Rather, a lack of
probable cause would be a reason to *apply* the good-faith
exception. *See United States v. Garcia*, 528 F.3d 481, 486 (7th Cir.
2008); *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002).
Moreover, Valley does not suggest that the agents were
dishonest or reckless in preparing the affidavit or that the
judge who issued the warrant was partial to or misled by the
agents. *See Leon*, 468 U.S. at 923, 926; *United States v. Woolsey*,
535 F.3d 540, 546 (7th Cir. 2008). But no matter because Valley's
belief about an absence of probable cause is unfounded.

The affidavit for the search warrant recounts that child
pornography was downloaded from an identifiable IP address
on September 30, 2010. On November 23, the Internet Service
Provider was subpoenaed for information identifying the
subscriber for that IP address, which turned out to be Valley's
mother, Kay Jenson. In March 2011 the investigating agent
conducted a public record search for Jenson, confirming her

No. 13-2870                                                11

address, and in May 2011 conducted surveillance on the home. The affidavit for the warrant acknowledges the delay, noting that in "almost every instance" when multiple months separate discovery of child pornography and issuance of a warrant, the images remain on the computer even if the computer moves or Internet access ends.

This court has discussed the persistence of digital storage, noting that in only the "exceptional case" will a delay between the electronic transfer of an image and a search of the computer "destroy probable cause to believe that a search of the computer will turn up the evidence sought." *See United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) (concluding that seven-month delay between discovery of images and search of computer was "too short a period" to dissipate probable cause). We can discern no meaningful difference between the facts in *Seiver* and those in this case. The warrant alerted the issuing judge to the long-lasting imprint of digitally stored data. The issuing judge's determination of probable cause is entitled to great deference. *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008); *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008). Valley attempts to distinguish *Seiver* by arguing that the warrant in this case includes no evidence of continued possession. But as *Seiver* makes clear, there need not be any such evidence; investigators looking for digital evidence can assume it remains on the hard drive because modern computers by default retain the data. *Seiver*, 692 F.3d at 778.

Valley's argument that the warrant is too vague fares no better. Probable cause in this context means a "fair probability" that Valley's computer would hold child pornography.

Case: 3:11-cr-00133-bbc   Document #: 110-1   Filed: 07/11/14   Page 12 of 13
Case: 13-2870      Document: 00712268730      Filed: 07/10/2014      Pages: 13

*See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Prideaux-Wentz*, 543 F.3d at 960–61. According to the affidavit, authorities had identified multiple images of suspected child pornography, at least three of which an agent viewed and confirmed to be what the file names described. The IP address from which those images were downloaded then was traced to the residence Valley shared with his mother. This was enough information for a judge to conclude that child pornography likely existed on a computer located at that residence. *See Prideaux-Wentz*, 543 F.3d at 961; *United States v. Hall*, 142 F.3d 988, 995 (7th Cir. 1998). There is nothing "vague" about the investigative steps described in the affidavit.

In his final argument Valley decries his sentence as unreasonable because, he says, the district judge failed to "give adequate deference" to the factors listed in 18 U.S.C. § 3553(a). As examples, he argues in passing that the judge did not fully discuss his mental health and, even more briefly, protests that the judge was silent about his lack of a criminal history.

The district judge's explanation for the sentence is adequate. The judge acknowledged Valley's struggles with mental illness and behavior disorders, yet expressed concern about the danger he presents to the community. The judge described Valley as a "conniving, manipulative, self-absorbed young man," interested in only his own pursuits, from whom the community needs protection. The judge bemoaned the "staggering" number of victims, who were involved "in ways that were completely inappropriate and illegal," and of whom Valley took many of the pictures stored on his computer, seemingly without remorse. The judge also discussed Valley's childhood and limited work history, juxtaposed with the

No. 13-2870                                                         13

details of his crimes and his "calculated, manipulative[,] and deceitful" actions.

The judge's explanation demonstrates meaningful consideration of the relevant factors in § 3553(a), factoring in Valley's specific conduct. That is all we require. *See United States v. Paige*, 611 F.3d 397, 398 (7th Cir. 2010). The judge did discuss Valley's mental-health issues but decided nonetheless that his repugnant behavior mandated a severe sentence. Nothing more was required to explain this presumptively reasonable, within-guidelines sentence. *See Rita v. United States*, 551 U.S. 338, 356 (2007); *United States v. Eads*, 729 F.3d 769, 781–82 (7th Cir. 2013). And the judge did mention Valley's criminal history, which includes three convictions for disorderly conduct, but included it among reasons to impose a high sentence. We see no issue with Valley's sentence.

### III. CONCLUSION

Valley's challenges to the denial of his motions to suppress are without merit. The district court properly denied his motions and sentenced him appropriately. Accordingly, we AFFIRM the judgment of the district court.