IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

Case No.:  11-cr-00133-bbc

THOMAS VALLEY,

Defendant.

GOVERNMENT'S BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION FOR COMPASSIONATE RELIEF

## Introduction

Defendant Thomas Valley has filed a pro se motion for compassionate release under the First Step Act of 2018. (R. 120).[1]  The Federal Defender's Office has declined to represent him in this matter. (R. 121). The United States objects to the defendant's request, believing that he does not present compelling and extraordinary reasons warranting release and is a danger to the community if released.

## Background

From at least December 2010 to May 2011, the defendant, posing as a teenage boy - either "Sam" or "Alan"- befriended numerous girls on social media sites. (R. 85, ¶ 9). Based on his directions and requests, the girls sent sexually explicit pictures of themselves to him.  (Id.).  If one of these girls wanted to meet "Sam" or "Alan," Valley would show up instead and say he was the boy's uncle.  (Id.).  Valley had an intricate

---

[1] To the extent the defendant also complains about conditions at the prison, relief is not available under 18 U.S.C. § 3582.

filing system to store the images he received and keep notes about the relationships he maintained with each girl. (Id.). In addition to the charged counts detailed below, there were approximately 50 unidentified victims. (Id., ¶ 42).

Minor A met "Sam" on MyYearBook in December 2010. (R. 85, ¶ 28). "Sam" said he was 17 years old and played in a band. (Id.). Minor A began to send naked pictures of herself to "Sam," at his request, approximately three weeks after meeting him. (Id.). "Sam" specifically asked her to take pictures of her vagina. (Id., ¶ 29). Forensics showed Valley received the images of Minor A on his cell phone.

Minor B met "Alan" on MyYearBook and "dated" him for approximately two months. (R. 85, ¶ 30). "Alan" encouraged her to send nude pictures of herself to him, which she did. (Id.). Forensics showed that Valley received these images on his cell phone. (Id., ¶ 31).

Minor C also met "Alan" on MyYearBook. (R. ¶ 32). At "Alan's" request, she took nude pictures of herself and sent them to him. (Id.). Forensics showed that Valley received these images on his cell phone. (Id., ¶ 33). "Alan" begged her to take and send the photos. (Id.).

Minor D met "Alan" through MyYearBook and they communicated by text message. (R. 85, ¶ 34). In January 2011, she was unable to spend the night at a friend's house, so "Alan" told her she could stay at "Tommy's" home. (Id.). While there, "Tommy," the defendant, took topless pictures of her. (Id.). Forensics showed that Valley possessed a photo of Minor D depicting her buttocks and vagina. (R. 85, ¶ 36).

Other photos showed her standing nude in front of a mirror and close-ups of her

vagina.  (Id.).  These pictures were emailed and texted to "Alan" at his request.  (Id.).

Minor E met "Sam" on MyYearBook in March 2011.  (R. 85, ¶ 38).  Minor E made

plans to meet "Sam" at a local festival but only "Tommy," the defendant, showed up.

(Id.).  While there, Minor E and the defendant went to his car where the defendant

kissed Minor E and attempted to fondle her breasts.  (Id.).  Forensics showed that the

defendant possessed a picture of Minor E exposing her vagina.  (Id., ¶ 39).  Minor E

took this picture based on "Sam's" request to take a picture that showed "everything."

(Id.).

Forensics also showed Valley possessed a webcam video of Minor F appearing to

masturbate.  (R. 85, ¶ 41).  The webcam video was recorded by Valley as he watched the

video.  (Id.).

Several other minor females were interviewed during the investigation and

admitted sending Valley nude pictures.  (R. 85, ¶ 42).  One met him at his home when

she went there for a photo shoot.  (Id.).  While he did not take nude photos of her,

agents discovered he had a video camera in the bathroom that secretly recorded her

changing clothes.  (Id.).

The defendant was taken into custody after a search warrant was executed at his

residence.  While in jail, he sent letters to his girlfriend, with specific and detailed

instructions to log into his social media accounts and delete his profiles.  (R. 85, ¶ 44).

He also instructed her to send a letter to his attorney from "Alan" saying "Alan" would

kill himself if Valley was not released from jail.  (Id.).  He further told her to send a

letter to him at the jail that appeared to come from her father and that admitted the computers and the images were the father's.  (Id.).   Valley instructed her to use gloves and a glue stick to prepare these letters so there was no evidence she sent them.  (Id).

On December 7, 2011, the grand jury indicted Valley for six counts of manufacturing child pornography, in violation of Title 18, United States Code, Section 2251(a).  (R. 2).  The charges involved Minors A-F.  On February 24, 2012, Valley's attorney filed a motion for a competency examination.  (R. 14).  The defendant was evaluated and ultimately found competent.  (R. 33).

On April 18, 2013, the United States filed an Information, charging Valley with two counts of receiving child pornography from Minors B and C, in violation of Title 18, United States Code, Section 2252(a)(2). (R. 69).  On April 23, 2013, the defendant waived indictment and pleaded guilty to both counts in the Information pursuant to a written plea agreement.  (R. 70, 71, 72).  As part of the plea agreement, the defendant stipulated that the conduct charged in the Indictment had occurred and should be considered in his guideline calculations as if he had been convicted.  (R. 72).

A presentence report (PSR) was prepared that determined Valley's advisory guideline range to be life in prison, capped by the statutory maximum of 40 years. (R. 85, ¶ 147).  At sentencing, the Court determined the defendant's total offense level to be 42.  (R. 105, p. 26).  When combined with criminal history category I, this placed the defendant's advisory guidelines at 360 months to life, capped by the statutory maximum term of imprisonment of 40 years.  (Id.).

4

Prior to imposing sentence, the Court opined that it would be "wonderful if there were some kind of mental institution that was capable of dealing with [him]" and others with similar problems.  (R. 105, pp. 21-22).

The Court continued,

> The question is do I say I really feel sorry for your problems and you don't - - you're not going to get any better in prison, so I should keep you out or give you a short term?  How do I look at all the girls out there that are potential victims of yours?  They deserve protection, and the only way I know to protect them is to put you in custody.  I wish for your sake and particularly for your mother's sake, because I can tell that she's - - this has been an agonizing time for her, but I don't see any other option.

In the end, the Court believed a significant sentence was necessary, noting the defendant's scheme "extended beyond the typical case involving the possession, distribution or receipt of child pornography" and included approximately 50 unidentified victims.  (R. 105, pp. 25, 27).

The Court was also concerned with the fact that the defendant posed as the uncle of his personas to meet some of the girls to have sex with them and lured girls to his home by telling them he operated a modeling agency.  (R. 105, p. 27).  The Court finally noted that the defendant had a "history of grandiose thinking and fabrication of stories about [his] life" and found him to be "calculated, manipulative and deceitful in [his] actions, preying on young girls for [his] own sexual gratification," making him a danger to the community.  (Id.).

The Court then sentenced the defendant to 40 years in prison, noting Valley's guidelines greatly exceeded the statutory maximum.  (Id.).  The

defendant is currently placed at USP Marion with a release date of August 10,
2045.

Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a
defendant's motion to reduce his or her prison term. Before filing that motion, however,
the defendant must first request that BOP file such a motion on his or her behalf.
§ 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his
sentence only if the motion was filed "after the defendant has fully exhausted all
administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on
the defendant's behalf," or after 30 days have passed "from the receipt of such a request
by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of
imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the
Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant
such a reduction" and (ii) "such a reduction is consistent with applicable policy
statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant,
the defendant bears the burden to establish that he or she is eligible for a sentence
reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*,
764 F.3d 1352, 1356 (11th Cir. 2014); *See also United States v. Taylor*, 778 F.3d 667 (7th Cir.
2015).

The Sentencing Commission has issued a policy statement addressing reduction
of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that

a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[2]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

(I)     suffering from a serious physical or medical condition,
(II)    suffering from a serious functional or cognitive impairment, or
(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the

---

[2] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

Argument

This Court should deny the defendant's motion for compassionate release because the defendant has not shown an extraordinary and compelling reason for release and because he has not met his burden to show that a reduction is warranted in light of the danger that he would pose to the community.

I.    The Defendant Has Exhausted Administrative Remedies.

It appears the defendant has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c).  Therefore, his motion is ripe for review.

II.    The Defendant's Medical Condition Does Not Place him at a Higher Risk to Contract COVID-19

In support of his motion for compassionate release, the defendant claims his age, acute sinusitis, hypertension, and asthma make him more susceptible to COVID-19.  (R. 120, pg. 1).  As an initial matter, anything the defendant claims must be viewed with some skepticism.  As Magistrate Judge Crocker found, the defendant is an "incorrigible fabulist."  (R. 75, pg. 13).  As reported in his competency exam, Valley engaged in "a repetitive pattern of fantastical lying."  (Id.).  The evaluator found his use of the alter identities of Alan and Sam to be "part of his clever and very organized ruse to manipulate his victims and create a convenient cover story for himself.  These behaviors are not consistent with those of a confused or mentally ill individual; rather they are suggestive of practiced prevarication."  (Id.).  The defendant's medical records bear this

out.  As an example, he reports needing a bottle of aspirin a day to alleviate his lower back pain, but records show he only purchased one bottle in the three months prior to his exam.  (Exhibit A, pg. 2).

His medical records do not appear to mention asthma but confirm his sinusitis and hypertension.  They also indicate, however, that he is non-compliant with his treatment and declines to have this condition treated.  (Exhibit A, pg. 51).  Additionally, he is only 36 years old and none of his conditions are not listed as high-risk groups on the CDC website.

Moreover, the defendant has already been diagnosed with COVID.  (Exhibit A, pgs. 7-45).  After 10 days in isolation, he was found to be asymptomatic and determined to be recovered.  (Id., pg. 7).  It appears his only symptom was a sore throat on one day. (Id.).

Even if his conditions were more serious, the defendant does not indicate any medical care needed or provide any information showing he would get better care in the community than he would in the Bureau of Prisons.   His claims seem to be general concerns about COVID which are not enough to warrant release.

III.    Should the Court Reach the Merits, It Should Deny the Motion Because the Defendant Poses a Danger to Public Safety.

It is the United States' position that no extraordinary and compelling circumstances exist in this case, and that BOP has taken appropriate measures to protect the defendant's health.  Even if this Court disagrees, the policy statement set forth in § 1B1.13 is clear that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the

extent that they are applicable," *and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."* USSG § 1B1.13 (emphasis added). Even if the defendant's medical conditions constituted an extraordinary and compelling circumstance in light of COVID-19, the defendant is a danger to the community and as such, cannot be released.

The defendant created the personas of teenage boys, "Alan" and "Sam," to meet and communicate with minor girls online. (R. 78, ¶ 9). He asked girls he met online to send sexually explicit pictures of themselves to him and he sent sexually explicit pictures of himself to them. (Id. ¶ 9). If a girl wanted to meet one of the personas, he would pose as an uncle and show up to meet the minor girl. (Id. ¶ 9).

The defendant's computer had an intricate file storage system, indicating that he had contact with approximately 60 minor girls. (R. 78, ¶ 24). The files were arranged by those that had or did not have nude images and included specific information about personas he used to communicate with each girl. (Id.).

On at least one occasion, a minor went to the defendant's home after "Alan" told her she could stay there. (R. 78, ¶ 34). While there, the defendant took topless pictures of her. (Id.). According to the victim, the defendant sexually assaulted her. (Id). On another occasion, the defendant met one of the victims at a local festival. (R. 78, ¶ 38). The victim went to a car with the defendant where he attempted to fondle her breasts and genital area. (Id.).

After he was arrested, he contacted his girlfriend and asked her to destroy evidence. (R. 78, ¶ 44). He also told her to set up her father for the crime. (Id)

Based on these facts, this Court found the defendant to be a danger to society and found the number of victims "staggering." (R. 105, p. 20). The Court further indicated the defendant was "conniving, manipulative, and self-absorbed" and found that he "preyed on young girls for [his] own sexual gratification." (R. 105, pp. 21, 28).

In considering the defendant's mental health issues, the Court noted, "I realize that you have mental problems and that you've been struggling with a lot of either mental illness or behavior disorders, but I have to think of the danger that you present to the community." (R. 105, p. 21). The Court further noted there was no realistic alternative to incarceration, ultimately concluding that the only way to protect the public was through a long prison sentence. (R. 105, p. 22).

That remains the case today. The defendant is clearly a danger to the community and should not be released.

<u>Conclusion</u>

For all these reasons, the United States asks this Court to deny the defendant's motion for compassionate release.

Dated this 6th day of January 2021.

SCOTT C. BLADER
United States Attorney

By: _____/s/_____
ELIZABETH ALTMAN
Assistant United States Attorney

11

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2021, I caused a copy of the United States' response to be placed in the United States Mail, First Class and postage prepaid, addressed to:

Thomas Valley #07544-090
USP Marion
P.O. Box 1000
Marion, IL  62959

/s/

_____

Lisa A. Pierce