IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                                                                                              OPINION AND ORDER

              Plaintiff,

                                                                                             11-cr-133-bbc

     v.

THOMAS VALLEY,

              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      On December 21, 2020, defendant Thomas Valley moved for compassionate release under the First Step Act of 2010. The government opposed the motion on the ground that defendant had not made the showing required before the court could find in his favor, which was that he had an extraordinary and compelling reason for a reduction in his sentence; he was not a danger to any other person or to the community; and a reduction would be consistent with the applicable policy statements of the United States Sentencing Commission. Defendant did not file a reply brief. The court denied defendant's motion on January 19, 2021. Dkt. #128. On February 22, 2021, defendant moved for reconsideration of the court's order, stating that he did not have an opportunity to file a reply brief responding the government's objections before the court ruled on his motion. Dkt. #129. The court withdrew the order denying defendant's motion for compassionate release and gave defendant an opportunity to respond, dkt. #130, which he did on May 10, 2021, dkt. #131.

      Having reviewed defendant's extensive response, I conclude that his motion for

1

compassionate release must be denied. Although he has set forth additional reasons why he believes he should be released, he has not shown that he has extraordinary and compelling reasons for a sentence reduction, that he is no longer a danger to other persons (specifically to young girls in their teens), or that a sentence reduction would be consistent with the Sentencing Commission's policy statements.

BACKGROUND

According to the charges against defendant, who was in his 40s when he was arrested, he posed as a teenage boy online and "befriended" a number of girls on social media sites. He asked the girls to send him sexually explicit pictures of themselves, which many of them did. Sometimes a girl asked to meet him in person, in which case he would show up and introduce himself as the uncle of the boy the girl thought she was going to meet. In at least one instance on which this happened, defendant tried to fondle the young girl's breasts. On another occasion, defendant arranged for a young girl to stay overnight at his house and took pictures of her while she was topless.

In December 2011, defendant was indicted on six counts of manufacturing child pornography, in violation of 18 U.S.C. § 2251(a), with each count relating to a different young girl. His counsel moved for a competency examination, which resulted in a finding that defendant was competent to stand trial.

In April 2013, the government filed an information charging defendant with two counts of receiving child pornography from minors B and C. The same month, defendant

waived his right to indictment and entered a plea of guilty to both of the counts charged in the information. He stipulated that the conduct charged in the indictment had occurred and could be considered in the guideline calculations. Defendant's guidelines were 360 months to life, but they were capped by the statutory maximum term of 40 years. He was sentenced to two consecutive terms of twenty years.

## OPINION

Defendant makes his request for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A), a provision of the First Step Act of 2018. Under this provision, the court may reduce or terminate a sentence when the "defendant has fully exhausted all administrative rights;" the court finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, as well as "the factors set forth in section 18 U.S.C. § 3553(a) to the extent that they are applicable." Under the applicable policy statement, U.S.S.G. § 1B1.13, the court determines whether "the defendant is [] a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The government does not deny that defendant has fully exhausted his administrative rights, but it takes issue with his claim that his medical conditions qualify as an extraordinary and compelling reason to warrant a reduction in his sentence. A review of defendant's submission of his alleged medical conditions shows only hypertension and acute sinusitis. He says that he suffers from asthma and has tried on multiple occasions to

3

persuade the prison health services to add it to his records, without success. He also says that he contracted COVID-19 in July 2020, which caused him breathing problems, about which he complained to a prison nurse, who promised him breathing treatment that has not materialized.

As the government notes, neither defendant's age nor his confirmed medical conditions place him at an increased risk for severe illness from the virus that causes COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (visited May 25, 2021). Defendant contends that he has a significant possibility of contracting COVID-19 while he is incarcerated because of the prison's failure to take the necessary precautions to avoid an outbreak, but he also says that he has already contracted the virus. If he is correct about this, the likelihood of his contracting it again is very low, according to a study published in JAMA [Journal of American Medical Association] Internal Medicine. https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2776810 (visited May 25, 2021). See also https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (visited May 25, 2021) (noting similar unlikelihood of reinfection).

Defendant cites no evidence in support of his claim that his asthma would endanger him if he were to contract COVID-19 again. He simply quotes language from the CDC to the effect that "people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." Dkt. #131, at 3. Without any evidence that he actually has moderate or severe asthma and taking into account his own statement that he has already

4

contracted and recovered from COVID-19, he has shown no reason why asthma should be a reason for granting him a compassionate release from prison.

As for defendant's concern about the effect of hypertension on him if he were to contract COVID-19 again, he has failed to show any basis for concern. Even if his hypertension were untreated, which he does not claim, he has not shown that this condition had any adverse effect on him when he contracted COVID-19 last year.

Accordingly, I conclude that defendant has failed to show that his medical condition and risk of contracting COVID-19 qualify as an extraordinary and compelling reason to reduce his sentence at this time. 18 U.S.C. § 3582(c)(1)(A)(i). In any event, even if defendant had made such a showing, he would have to show that he does not present a danger to the safety of any other person or to the community, as required under 18 U.S.C. § 3142(g). Under this provision, the court is to consider the nature of the offense and, specifically, whether it was a crime of violence; the defendant's character, physical and mental condition; and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. Id.

Defendant has demonstrated his dangerousness by his past history of sexual predation. He has shown no reason to believe that he would act differently today if he were to be released from prison. He seems to believe that his acts were not particularly serious, but unlike the majority of persons charged with exchanging sexually explicit images of minors, he did not limit himself to the receipt and exchange of existing pornographic images. Rather, he worked actively to persuade young girls to send him images of themselves in specific poses

that he requested and that would be classified as pornographic. In addition, he produced new pornographic images of young girls who visited him in a so-called "studio" in his home.

Citing Pepper v. United States, 562 U.S. 476, 482 (2011), defendant says that he now has a "complete different mind set than he did ten years ago, and therefore is not a danger in any way to the community." Dkt. #129, p. 13. In support of this statement, he has filed the "witness declaration" of another inmate at USP Marion in Marion, Illinois, who supports defendant's clams about an erroneous medical record. However, the declaration is not evidence of defendant's treatment because the inmate is not a medical expert who can testify about defendant's treatment and its effects. In addition, the other inmate's statements about his conversations with defendant about his increasing faith and his expressions of remorse for his past actions are only hearsay evidence.

In any event, the holding in Pepper does not apply to defendant. In Pepper, the defendant was being re-sentenced, which made it appropriate for the court to consider the most up-to-date picture of him. Defendant remains in custody, without the opportunity Mr. Pepper had to show how he would act when he was released from prison. Pepper had been convicted of drug offenses; at his second sentencing hearing, he testified that he had overcome his drug addiction after completing a 500-hour drug treatment program in prison; he had enrolled in a community college at which he earned good grades; and he had a part-time job. In addition, his probation officer testified that he had provided substantial assistance, had engaged in postsentence rehabilitation, and demonstrated a low risk of recidivism. Pepper, 482 U.S. at 492-93. In contrast, when defendant committed the crimes for which he is now

incarcerated, he was considerably older than Pepper had been when he committed his drug offenses. Moreover, there is significant evidence that defendant's crimes were not the first of their kind.

Defendant says that he has made serious gains in understanding the manipulative person he was at the time of his sentencing: earning his GED, participating in self-help programs at the prison, enrolling in adult continuing education courses, joining the Orthodox Jewish Faith, and working for UNICOR at one time. All of this is admirable, but it does not demonstrate that he would not be a danger to other persons, particularly to young girls, or to the community.

After considering all the factors in the policy statement in USSG § 1B1.13 and the sentencing factors in 18 U.S.C. § 3553(a), I am not persuaded that defendant's circumstances warrant a reduction in his sentence. Accordingly, defendant's motion for compassionate release will be denied.

## ORDER

IT IS ORDERED that defendant Thomas Valley's motion for compassionate release, dkt. #120, and motion for reconsideration, dkt. #129, are DENIED.

Entered this 25th day of May, 2021.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge